STATE EX REL. VETRIS C. MILLER, ET AL. *v.* FRANK F. MCDONALD, AS MAYOR OF THE CITY OF EVANSVILLE, INDIANA.

[No. 1271S377. Filed July 3, 1973. Rehearing denied August 31, 1973.]

*Harry P. Dees, Alan N. Shovers, Thomas O. Magan,* of Evansville, for appellant.

*John C. Cox, Timothy R. Dodd,* of Evansville, for appellee.

HUNTER, J.—This is an appeal by Vetris C. Miller and others similarly situated (plaintiffs below) from an adverse summary judgment entered in the Warrick Circuit Court on July 13, 1971. Appellants, subsequent to judgment, filed a motion to correct errors, which was overruled on November 8, 1971, resulting in this appeal.* Jurisdiction to entertain this appeal is based on IC 1971, 33-3-2-7 (Ind. Ann. Stat. § 4-214 [1968 Repl.]) which was in force at the time the appeal was effected.

The record discloses the following facts and proceedings:

Prior to February 24, 1969, the Municipal Code of Evansville, Chapter 933, provided for the Board of Public Works to collect refuse from all dwelling and apartment houses as a city service.[1] On February 17, 1969, Chapter 933 was amended to limit collection services to all dwelling houses and

---

* This case was re-assigned to this office May 22, 1973.

1. "933.01 BOARD TO PROVIDE FOR COLLECTION AND DISPOSAL. The Board of Public Works is authorized and empowered to provide for the collection and disposal of all garbage, ashes, trash and waste materials, which accumulate from time to time on or about the premises of all dwelling houses, apartment houses or other private or public structures or buildings in the City and to acquire such equipment, vehicles, containers and employ such personnel as may be necessary and required therefor."

to apartment complexes containing four or less units.[2] Apartment buildings with more than four units are deemed to be "commercial enterprises" and hence, outside the ambit of the ordinance.

Plaintiff-apartment-owners brought this class action against the City of Evansville, alleging (as they do on appeal), *inter alia*, that the ordinance, as amended offends the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article 1, Section 23, of the Indiana Constitution. That particular section of plaintiff's complaint is set out below:

> "That Section 933.03, subparagraph (5) of Ordinance No. G-69-9, which defines an apartment building exceeding four dwelling units as a commercial enterprise and excluding such apartments from household refuse collection service to be furnished by the City, is unconstitutional, unreasonable and void as being arbitrary, capricious and discriminatory as to the plaintiffs and the class they represent, being all persons owning apartment buildings with more than four dwelling units located therein, and in violation of Article 1, Section 23, of the Constitution of Indiana and Article 14, Section 1, of the Constitution of the United States, which provisions read as follows:
>
> "Article 1, Section 23, of the Constitution of Indiana:
> " '§ 23. Privileges equal.—The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.'
> "Article 14, Section 1, of the Constitution of the United States:

---

2. The pertinent sections read as follows:

"933.01 BOARD TO PROVIDE FOR COLLECTION AND DISPOSAL. The Board of Public Works is authorized and empowered to provide for the collection and disposal of all household refuse, which accumulates from time to time on or about the premises of all residential dwelling units, *apartment houses as defined herein* or other private or public structures or buildings in the City, and to acquire such equipment, vehicles, containers and employ such personnel as may be necessary and required therefor. The Board may also, pursuant to the power vested in them by the Statutes of the State of Indiana, contract for such services."

"5. APARTMENT BUILDING—The term 'apartment building' as used in this chapter shall not exceed four dwelling units in said building. Apartment buildings exceeding four dwelling units shall be considered as commercial enterprises."

" '§ 1. Citizenship—Due Process of Law—Equal Protection.—All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'

"that said Ordinance No. G-69-9 is unreasonable, arbitrary, capricious, discriminatory, illegal and void as applied to the classification of apartment buildings containing four or more dwelling units because such classification is arbitrary and artificial in that said classification is not based on substantial distinctions with reference to the subject matter, and is arbitrary and artificial in that it does not embrace all parties naturally and inherently within the class of persons who generate household refuse; that the household refuse as defined in Ordinance No. G-69-9, which is generated by persons living in single dwelling units and persons living in apartment buildings with four or less dwelling units is identical with the household refuse generated in apartment buildings containing five, six or more dwelling units in any such building; that the plaintiffs' apartments and the apartments of the members of the class they represent herein are all zoned as residential and not as commercial enterprises; that the defendant City's Department of Waterworks and the utilities companies also classify said apartments as non-commercial; that by reason of the aforesaid Ordinance No. G-69-9 is unconstitutional, void and in violation of the constitutional rights of the plaintiffs herein and the persons in the class represented by them."

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." Article 1, Section 23, of the Constitution of the State of Indiana embodies essentially the same spirit as its federal counterpart:

"The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

Therefore, for purposes of equal protection analysis, the two shall be considered synonymous with one another. ■ There are a myriad of Indiana cases in which the two provisions have been considered in unison.

In order to attack alleged discriminatory action on equal protection grounds, the alleged act or acts must be perpetrated by the state or an agency thereof. It has been held ■ that municipal ordinances, passed pursuant to state enabling legislation, is state action as contemplated by the Fourteenth Amendment. *Lovell* v. *Griffin* (1937), 303 U.S. 444, 58 S. Ct. 666. In the case at bar, we are confronted with a municipal ordinance authorized by state law. (IC 1971, 19-2-1-1, *et seq.;* Ind. Ann. Stat. § 48-4245, *et seq.* [1963 Repl.]). The greater question, of course, is whether that ordinance invidiously discriminates against a particular group of people, namely those people in Evansville owning apartment buildings of five or more units.

The Equal Protection Clause does not prevent a state or municipality from indulging in *reasonable* legislative classification. *Graham* v. *Richardson* (1971), 403 U.S. 365, ■ 91 S. Ct. 1848. Generally speaking, if a classification is shown to have any rational or reasonable basis, it will be sustained. *Graham, supra; United States* v. *Maryland Savings-Share Ins. Corp.* (1970), 400 U.S. 4, 91 S. Ct. 16. Normally, the enactment is presumed to be valid; the burden being on the party challenging its validity to overcome such presumption. *Graham, supra; San Antonio Independent School District* v. *Rodriguez* (1973), 41 Law Week 4407.

There are instances in which the rational basis formulation is inadequate and a stricter standard of judicial scrutiny is required. If fundamental rights or "suspect" classes are involved, the State and not the complainants must shoulder a "heavy burden of justification" by proving a compelling state interest and a *necessary* relation between that interest and the classification in question. *Rodriguez, supra; Bullock* v. *Carter* (1972), 92 S. Ct. 849; *Graham, supra; Turner* v.

*Fouche* (1970), 396 U.S. 346, 90 S. Ct. 532; *Shapiro* v. *Thompson* (1969), 394 U.S. 618, 89 S. Ct. 1322.

In the case at bar, there is no fundamental right at stake, nor is there any suspect class involved. The question to be asked in this case, then, is whether "any state of facts rationally justifying it [the ordinance] is demonstrated to or perceived by the courts." *United States* v. *Maryland Savings-Share Ins. Corp., supra.*

Chapter 933 of the Municipal Code of Evansville, as amended, establishes two basic classifications. First, a distinction is drawn between apartment houses of four or less units and apartment houses of five or more units. Apartment houses of four or less units are eligible for the city pick-up service, while larger apartment complexes are deemed to be commercial and, therefore, not entitled to the public service. We are unable to discern any rationality in such a distinction.

Black's Law Dictionary (4th Edition) defines "commerce" as "[t]he exchange of goods, productions, or property of any kind" and "commercial" as that which is related or connected with commerce in general. The renting of living space is clearly a "commercial enterprise"; the landlord provides shelter and services in exchange for rent. Is a two or three or four-unit apartment complex any less a "commercial enterprise" than a ten-unit apartment complex? Obviously, the *quantity* of goods and services being exchanged varies with the number of units in the building, but the *nature* of the relationship remains the same.

We believe Ordinance 933, as amended, *transparently* distinguishes between commercial and noncommercial enterprises. Such a classification is arbitrary and devoid of any apparent rationality. The ordinance applies a double standard to those who, in reality, are in the same class without any reasonable justification. Therefore, the commercial-noncommercial distinction, as delineated by the ordinance, denies similarly situated persons equal protection of the laws.

Chapter 933.01, as amended, provides for the collection and disposal of all "household refuse" "on or about the premises of *all residential dwelling units, apartment houses as defined herein or other private or public structures or buildings in the City . . .*" (Emphasis added.) "Household refuse" is defined by 933.03, as amended, as follows:

"1. HOUSEHOLD REFUSE—the term 'household refuse' shall mean all kitchen wastes, including cans, bottles, household food, accumulations of animal food and vegetable matter attendant to the preparation, use, cooking and serving of foods. It shall also include ashes, empty cartons, crates, boxes, wrapping materials, newspapers and magazines, cloth materials, discarded toys, discarded clothing and similar materials when placed in a standard container or in the bundle defined herein."

Here, once again, the ordinance draws a constitutionally impermissible distinction. The ordinance, *on its face,* distinguishes between apartment houses of five or more units and "other private or public structures or buildings" generating "household refuse." The disposal service is denied to apartment houses of five or more units on grounds that such dwellings are "commercial enterprises." But what are these "other private or public structures or buildings?" They surely are not "residential dwelling units" or "apartment houses as defined herein." What "other private or public structures or buildings" do, in fact, generate "household refuse" as defined by the ordinance? Restaurants do. Hotels do. Rooming houses do. Are these not commercial enterprises?" Why, then, should these "commercial enterprises" be treated any differently than apartment houses with five or more units? Once again, the ordinance treats those similarly situated in a dissimilar fashion. We cannot conceive of any set of facts which could reasonably justify such a classification.

For all the foregoing reasons, we hold that Chapter 933 of the Municipal Code of Evansville is violative of the Equal Protection Clause of the Fourteenth Amednment to the United

States Constitution and Article 1, Section 23, of the Constitution of the State of Indiana.

We, therefore, reverse and remand this cause to the trial court for further proceedings not inconsistent with this opinion.

Judgment reversed.

DeBruler and Prentice, JJ., concur; Givan, J., concurs in result; Arterburn, C.J., dissents without opinion.

NOTE.—Reported in 297 N. E. 2d 826.